## Case No. 13,354.

### Ex parte STEINER.

[1 Pa. Law J. 368.]

Circuit Court, E. D. Pennsylvania. Nov. 10, 1842.

BANKRUPTCY — PAYMENT BY ASSIGNEE FOR OVER-WORK — DEFINITION — "OPERATIVE."

An apprentice regarded as an "operative," within the fifth section of the bankrupt act of 1841, and his master, who was now bankrupt, having, before the bankruptcy, made an express agreement to pay him for all overwork, the court directed the assignee to pay the apprentice accordingly.

Huber, a certificated bankrupt, had made an agreement (while in business as a cutler, and long before the bankruptcy) with two of his apprentices (the petitioners) to pay them for "all overwork, according to the rate of wages that should be paid from time to time to journeymen." The facts were proved by Huber himself. The question was whether, being apprentices, the petitioners could be regarded as operatives, and so entitled to priority under the fifth section of the bankrupt act, which prefers to a certain amount "any person who shall have performed any labor as an operative in the service of any bankrupt." It was admitted that the claim was a meritorious one. The doubt on the subject was caused by the decision of the supreme court of Pennsylvania in Bailey v. King, 1 Whart. 113. In that case the mistress had been in the habit of making a pecuniary advance to her apprentices for all work done by them beyond a certain amount, but, this compensation was to be dependent on the apprentice's regular attendance at church, and his keeping regular hours at home; and the payment was refused because the apprentice had staid out all night, contrary to express direction. The chief justice said, in behalf of the court, that it was a question of grave concern whether the enforcement, by legal means, of agreements like the one before the court, was not forbidden by considerations of policy; that the relation of a master to his apprentice, if not parental, was at least pupillary; that in the case before the court the recompense was essentially in the nature of a premium to industry and good behavior; that, being so, it ought to be left to the master's award; for that, if promises designed as mere incentives to good conduct were to be the subject of suits at law, no master would make such promises. The whole court, being "entirely satisfied" on this subject, reversed the judgment below, which had been in favour of the apprentice. The court took occasion, however, to distinguish the case from that of Mason v. The Blaireau [2 Cranch (6 U. S.) 240], and called that "a very different case" from the one before them. The present case was not argued.

BALDWIN, Circuit Justice. It is admited that a master has a right to 'the reasonable labour of his apprentice, but where the master, prescribing how much time is reasonable, or how much the apprentice shall give, as of course, to his work, makes a special agreement to pay the apprentice for such work as he may voluntarily do beyond this, the court does not perceive that the agreement is of such a sort as necessarily contravenes any law. If a provision of the kind in question were incorporated in the indentures of apprenticeship, it would obviously be valid; and no adequate reason has been assigned for distinguishing an agreement made afterwards. Cases may be where the enforcement of agreements by a master in favour of his apprentice would contravene the laws or policy of a state; but the case now before us depends upon the construction of the bankrupt law, whose language in this particular is comprehensive. The case is very analogous to one which arose in Mason v. The Blaireau, 2 Cranch [6 U. S.] 240. There a master and his apprentice, being at sea, had saved a derelict ship, under circumstances of great peril; and the master, in addition to his own portion of the salvage money, claimed to have received that which had been decreed to the boy. But the court said that the claim was one which they felt "no disposition to support" unless the law of the case was clearly with the master; and that the authorities cited in his favour did not come up to the case. They add: "The right of the master to the earning of the apprentice in the way of his business, or of any other business which it substituted for it, is different from a right to his extraordinary earnings which do not interfere with the profits the master may legitimately derive from his service." Page 270. The same doctrine had been incidentally declared before this decision in The Beaver, 3 C. Rob. Adm. 292, where Sir William Scott divided a salvage fund between an apprentice and his master, in the proportion of £150 to £500, or of one to three and one-third. In one respect the case before us is stronger than either of those just cited. There the question as to what constituted extraordinary service, and what was a proper compensation for it, was settled by the court; while here both points have been determined by the master himself.

Upon the authorities, the comprehensive language of the act, and the admitted fairness of the claim, the court is of opinion that the petitioners may be regarded as operatives pro tanto, and that it would be too severe a construction which would exclude them from the priority.